**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **GARY BROOKS,** | **CASE NO. 5:23-CV-276-KKC-EBA** |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| **ORBIS CORPORATION,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for Summary Judgment (DE 12) filed by Defendant ORBIS Corporation ("ORBIS"). Now that this motion is fully briefed, this matter is ripe for the Court's review.

### I.

In 2014, ORBIS hired Plaintiff Gary Brooks ("Brooks") to work as a General Laborer in its Georgetown, Kentucky facility. Brooks transitioned to a Materials Handler role three years later, which he continued until his termination in early 2023. As a Materials Handler, was primarily responsible for "loading inbound and outbound freight, confirming product was processed correctly, and ensuring material movements were consistent with" ORBIS procedures. (DE 12-1 at 4.) Brooks reported directly to the Shipping Supervisor, who, in late 2019, was Ray Wells. The record demonstrates that Brooks and Wells had a somewhat contentious relationship.

In his approximately six years as a Materials Handler, Brooks received various corrective action notices ("CAN"s) for his "performance, attendance, and conduct[.]" (*Id.*) Some of these CANs were third, "final warnings" in the three-stage warning system ORBIS

implemented into its workplace.[1] Yet Brooks' termination did not occur until he violated a "Safety Absolute" rule, a separate employment policy aimed at establishing mandatory safety expectations for every employee. The relevant rule, No. 4, states that: "All semi-trailers must be chocked and/or secured with a trailer restraint . . . during loading/unloading operations[.]" (*Id.* at 6.)

One week after completing his Safety Absolutes training, Brooks admits that he failed to secure a trailer before loading it. Wells, the Shipping Supervisor, noticed this error "halfway through the loading process" and secured the trailer. (*Id.*) In accordance with ORBIS policies, Brooks was suspended from work pending the outcome of the investigation into his Safety Absolute violation. Relevant employees provided statements to local HR management. After review of the incident report, employee statements, video surveillance, and Brooks' past safety training and disciplinary actions, Georgetown's local management recommended to the ORBIS Safety Review Board ("SRB"), a newly-formed authority on corrective actions, that Brooks' employment be terminated. The SRB discussed the termination recommendation with Georgetown's local management and ultimately agreed to terminate Brooks' employment effective immediately.

Now, Brooks, a black man, asserts a single claim of race discrimination against ORBIS in violation of the Kentucky Civil Rights Act (KCRA). (DE 1-1 at 4.) He claims that when Wells became Shipping Supervisor, Wells "met with each and every white employee in the shipping and receiving department" and "did not meet with any of the Black

---

[1] Employees received a verbal warning, then a written warning, and then finally a final warning regarding specific violations.

2

employees in the department." (*Id.*) He further claims that other white employees had incurred similar safety violations and faced no disciplinary action, and that Wells fired "three of his four Black subordinate employees" but not any white employees. (*Id.*) Finally, he asserts that ORBIS replaced him with a white male. (*Id.*)

ORBIS has moved for summary judgment—essentially arguing that Brooks' argument fails at every step of the relevant race discrimination standard. It argues that: (1) Brooks fails to establish a *prima facie* case of race discrimination; (2) if the Court finds that Brooks establishes a *prima facie* case of race discrimination, ORBIS terminated Brooks for legitimate, nondiscriminatory reasons; and (3) Brooks cannot show that ORBIS' legitimate, nondiscriminatory reasons for terminating Brooks was pretextual. (DE 12-1 at 13, 21-22.) The Court will discuss each of ORBIS' arguments in turn.

## II.

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, this Court determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

Kentucky Courts analyze KCRA claims consistent with the United States Supreme Court's framework for unlawful discrimination claims under Title VII. Under Title VII, a plaintiff must provide either direct evidence of intentional race discrimination or apply the *McDonnell Douglas* burden-shifting framework to prove race discrimination using circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of race discrimination under the latter framework, Brooks must show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside of his protected class or was treated differently than similarly situated nonprotected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). ORBIS maintains that Brooks failed to present any direct evidence of intentional race discrimination and only disputes the fourth element of the *McDonnell Douglas* burden-shifting framework. (DE 12-1 at 13.)

**A.**

First, Brooks argues that he can establish race discrimination through direct evidence. Direct evidence is that evidence which, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" and does

4

not require any inferences. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). If direct evidence is produced, the burden shifts to the employer to show that it would have terminated the plaintiff even in the absence of discrimination. *Id.*

Here, the Court is persuaded that Brooks has failed to present any direct evidence of intentional race discrimination. Brooks points to the deposition testimony of James Cutwright, a black employee of ORBIS, as direct evidence in support of his race discrimination claim.[2] Specifically, he argues that Cutwright's assertions—that Wells interfered with Cutwright's time sheets and only nominated him for employee of the month and employee of the year **after** Brooks filed his lawsuit—are direct evidence of race discrimination. Yet a quick review of Cutwright's deposition undermines Brooks' claims that these assertions constitute direct evidence of race discrimination.

Most of Cutwright's assertions are based on what he heard in the workplace, not what he actually observed with his own two eyes. For example, he states that it was true that Wells met with each and every white employee upon his arrival and did not meet with any of the department's black employees, but then immediately that he only "**heard** that [Wells] met with [the white employees]" and that Wells did not meet with him. (DE 13-11 at 6.) He also agreed that he "**feel[s]** that Ray Wells treated White employees better than Black employees[.]" (*Id.*) He states that this feeling was based on Wells' lack of communication, then immediately concedes that Wells' lack of communication happened for white and black employees. (*Id.* at 10.)

---

[2] The Court is not convinced that ORBIS waived its argument regarding a lack of direct evidence by failing to mention Cutwright in its motion. ORBIS invoked the argument in its motion and the argument has been explored in the subsequent briefing.

5

While Cutwright brings up the issue of Wells mishandling his time sheet entries, nothing in his testimony relates that mishandling to Cutwright's race. In fact, he admits that he does not know if this practice extended to anyone else working in their department. Such an assertion cannot constitute direct evidence of race discrimination. His testimony about the employee award nominations fail for a similar reason. He may have been nominated for those awards after Brooks filed his lawsuit, but this evidence **requires** an inference to somehow connect it to potential race discrimination.[3] It alone does not show, without inference, intentional race discrimination in the workplace.

Because Brooks has not presented direct evidence of intentional race discrimination, the Court must apply the *McDonnell Douglas* burden-shifting framework to the facts. Yet, upon application, Brooks' claim still runs into numerous issues.

### B.

The only disputed element of the *McDonnell Douglas* framework is the fourth—requiring that the plaintiff show that he was replaced by a person outside of his protected class or was treated differently than similarly situated nonprotected employees. Brooks argues that not only was he replaced with a white employee, he was also treated differently than other white employees who made similar mistakes during their employment. The Court will discuss both arguments.

ORBIS asserts that Brooks has failed to show that he was replaced by a person outside of his protected class because he can only recall training a white male around the

---

[3] Could Cutwright not have been nominated for these awards for doing an exemplary job at work? That question alone demonstrates why this cannot serve as direct evidence of race discrimination.

6

time of his termination, cannot remember the individual's name, and does not have any evidence that this individual actually replaced him after his termination. (DE 12-1 at 13.) In response, Brooks states that the only other black employee under Wells' supervision was Cutwright, so ORBIS **had** to have replaced Brooks with someone outside his protected class. (DE 13 at 14.) Brooks also appears to argue that he is not actually required to show that he was replaced by someone outside of his protected class—a puzzling claim that only works if he concedes this replacement argument and instead shows that he was treated differently than similarly situated nonprotected employees. If there are exceptions to the fourth element of the *McDonnell Douglas* burden-shifting framework, Brooks has provided no authority or case law suggesting that they apply to the current facts.

Brooks has failed to present affirmative evidence showing that he was replaced by someone outside of his protected class. Brooks states that he remembers training a white male at the time of his termination, but he cannot provide a name or point to any evidence that this individual replaced Brooks as a Materials Handler. He does not know if this individual even continued working at ORBIS after Brooks' termination. Brooks' argument hinges on an assumption that ORBIS must have replaced him with someone outside of his protected class. This assumption cannot constitute the affirmative evidence necessary to defeat an argument at the summary judgment stage. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (explaining that, to defeat summary judgment, the nonmoving party must present affirmative evidence to support its position and that mere "scintilla of evidence" is insufficient).

Next, ORBIS asserts that Brooks has failed to show that he was treated differently

7

than similarly situated nonprotected employees. Brooks, however, argues that two white employees, Doug Edwards and Gary Zumwalt, were not terminated when they engaged in the exact same safety violation as Brooks. He argues that Wells chose not to report Edwards and Zumwalt at all when they committed their safety violations.

In a race discrimination action, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment" to be considered "similarly situated." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 238 (6th Cir. 2015) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Instead, a plaintiff need show only that he and his comparator were "similar in all of the *relevant* aspects." *Id.* And when a termination is disciplinary in nature, a plaintiff must show that his proposed comparators engaged in acts of "comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). To make this assessment, the Court looks to factors such as whether the individuals have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.* (citations omitted).

Here, even assuming that Edwards and Zumwalt engaged in acts of "comparable seriousness," the element is not satisfied because Brooks' disciplinary history adequately differentiates the way that he was treated for his Safety Absolute violation. While Edwards testified that he had not received any disciplinary actions during his 27-year career at ORBIS and Zumwalt only received three verbal warnings—the first of a three-stage warning system—Brooks' disciplinary history is much more extensive. Not just throughout

8

his career, but **at the time of his termination**, Brooks had received a final warning for attendance, a final warning for conduct, and a verbal warning for performance. Further, the Court finds it distinguishing that Brooks' Safety Absolute violation occurred only one week after receiving his Safety Absolute training. Regardless of whether Edwards, Zumwalt, and Brooks dealt with the same supervisor and were subjected to the same standards, the differences in disciplinary history and circumstances of the Safety Absolute violation show that they were not similarly situated employees for the purpose of this analysis. Accordingly, the Court finds that Brooks has failed to establish a *prima facie* case of intentional race discrimination.

### C.

The Court's above analysis, regarding the question of whether Brooks was treated differently than similarly situated nonprotected employees, illustrates ORBIS' legitimate, nondiscriminatory reason for terminating Brooks' employment. ORBIS' policy for handling Safety Absolute violations is straightforward: local management conducts the initial investigation, reviews video of the violation and witness statements, considers the employee's disciplinary history, and then provides a recommendation to the SRB. Only then does the SRB review the recommendation, confer with local management, and decide on the appropriate disciplinary measure.

In this matter, Brooks was on his final warning for attendance and conduct, and had a verbal warning for performance at the time of his termination. Contrary to Brooks' assertion, it is not contradictory for ORBIS to claim that Brooks' disciplinary history contributed to its decision. ORBIS policies unambiguously state that local management

considers an employees disciplinary history when making its recommendation to the SRB. While Brooks *was* terminated for the Safety Absolute violation, the reasons for that termination inherently include the consideration of other factors, such as the nature of the violation and an employee's disciplinary history. Here, Brooks committed the Safety Absolute violation only one week after completing his Safety Absolute training and his disciplinary history was extensive. Such reasons are "clear and specific" enough to constitute legitimate, nondiscriminatory reasons for Brooks' termination.

### D.

Given that ORBIS has shown legitimate, nondiscriminatory reasons for Brooks' termination, the burden shifts back to Brooks and requires him to show that the legitimate reasons offered by ORBIS are simply pretext for discrimination. Brooks argues that ORBIS' reasons for termination are pretextual because: (1) Brooks' Safety Absolute violation did not motivate Wells' report; and (2) Brooks' Safety Absolute violation was insufficient to warrant his firing. (DE 13 at 20.) Yet much of Brooks' argument repeats his position that Edwards and Zumwalt were treated differently by their supervisor.

As Brooks argues, he is required to present evidence that the proffered reasons for termination: (1) have no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)). He asserts that all three options are met in this matter. Yet a plaintiff must also prove that the reasons are pretextual by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). As compared to

the prima facie stage, meeting this standard at the pretext stage requires an even closer correlation between the plaintiff and his comparators. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893–94 (6th Cir. 2020). Brooks fails to meet this burden with either of his two arguments.

First, Brooks argues that his Safety Absolute violation didn't actually motivate Wells to make his report. He first repeats his argument that ORBIS only considered the Safety Absolute violation in firing him—an argument that the Court rejected above—then continues to argue that Edwards and Zumwalt made the "exact same violation" and were not reported. (DE 13 at 20.) Thus, he argues it must have been motivated by Brooks' race.

The Court is not persuaded by this argument. The Court has already rejected Brooks' argument that ORBIS only considered the Safety Absolute violation in deciding to fire him. Further, the Court noted the facts distinguishing Brooks' violation from Edwards and Zumwalt's violations above. These facts, specifically his extensive disciplinary history and that his violation happened a week after receiving his Safety Absolute training, are differentiating circumstances that would distinguish the employer's treatment of him for his safety violation. Despite Brooks' claim that his disciplinary history "does not matter[,]" the record shows that he had an extensive disciplinary history while Edwards and Zumwalt did not. (*Id.* at 21.) Brooks also points to Edwards and Zumwalt's testimony about Wells "[being] a liar[,]" but assertions that Wells is a liar does not show that his decision to report Brooks actually shows intentional race discrimination. (*Id.*) Any dispute about whether Wells saw Edwards and Zumwalt's respective violations are irrelevant because the record shows that Brooks was not similarly situated with either Edwards or Zumwalt.

11

Second, Brooks argues this his Safety Absolute violation was insufficient to warrant his firing. (*Id.* at 21–22.) He, again, points to the argument that Edwards and Zumwalt made "the exact same safety violation" and were not reprimanded for it. (*Id.* at 21.) The Court, again, has already addressed this argument and pointed out the differentiating circumstances separating Brooks from Edwards and Zumwalt. None of the differentiating circumstances involve Brooks' race. Ultimately, the Court finds that Brooks has failed to produce sufficient evidence from which a jury could reasonably reject ORBIS' explanation and find that it was pretext for unlawful discrimination.

Even if the Court found that Brooks established a *prima facie* case of race discrimination, the above analysis shows that the burden-shifting test swings in favor of ORBIS. Accordingly, ORBIS is entitled to judgment as a matter of law.

### III.

For the aforementioned reasons, the Court hereby ORDERS that Defendant ORBIS Corporation's Motion for Summary Judgment (DE 12) is GRANTED. The Court will enter a judgment consistent with this opinion.

This 8th day of July, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY